UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRADLEY A. LAVITE, | ) | |
| | ) | **COMPLAINT FOR VIOLATION OF** |
| Plaintiff, | ) | **CIVIL RIGHTS** |
| v. | ) | |
| | ) | (Non-Prisoner Complaint) |
| ALAN J. DUNSTAN, in his individual capacity; | ) | |
| ALAN J. DUNSTAN, as Chairman of the | ) | Civil Action No.: 3:16-cv-882 |
| Madison County Illinois Board; | ) | |
| JOSEPH D. PARENTE, in his individual | ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| capacity; JOSEPH D. PARENTE, as County | ) | |
| Administrator of Madison County, Illinois; | ) | |
| JOHN D. LAKIN, in his individual capacity; | ) | |
| JOHN D. LAKIN, as Sheriff of Madison | ) | |
| County, Illinois; THE MADISON COUNTY | ) | |
| ILLINOIS SHERIFF'S DEPARTMENT, THOMAS | ) | |
| GIBBONS, in his individual capacity; THOMAS | ) | |
| GIBBONS, as State's Attorney of Madison | ) | |
| County, Illinois, and MADISON COUNTY, | ) | |
| ILLINOIS, an Illinois Municipality, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Bradley A. Lavite, by his attorney Thomas W. Burkart, for his Complaint states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction is conferred upon this court pursuant to 28 U.S.C.A. 1331 and 28 U.S.C.A. 1343 and *Monell v. Dept of Soc. Serv.,* 436 U.S. 658 (1978) because the Matthew in controversy arise under the Constitution and laws of the United States. This court has supplemental jurisdiction to hear the state claims of Bradley A. Lavite ("Plaintiff") under 28 U.S.C.A. 1367(a).

2.  Venue is proper in this court under 28 U.S.C.A. 1391(b) because a substantial part of, if not all the events that gave rise to Plaintiff's claims took place within Madison County Illinois, located within the area serviced by the District Court for the Southern District of Illinois.

**PARTIES**

3.  Plaintiff is, and was at all times during the incidents described in this Complaint, a citizen of Madison County, Illinois. Plaintiff is, and at all times relevant was, employed as the Superintendent of the Madison County Veterans' Assistance Commission, duly elected by the executive board of said Commission in 2009.

4.  Defendant, Alan J. Dunstan, is and at all times relevant hereto was the currently elected Chairman of the Madison County Board, and a resident of Madison County, Illinois.

5.  Defendant, Joseph D. Parente, is the current County Administrator of Madison County, Illinois, an unelected position appointed by the County Board Chairman. In his capacity as County Administrator, and under Section 31.16 of the Madison County Code, he acts under the direction of the Madison County Board Chairman to implement the actions of the County Board. Joseph D. Parente resides in Madison County, Illinois.

6.  Defendant, John D. Lakin, is and at all times relevant hereto was the currently elected Sheriff of Madison County, Illinois, and a resident of Madison County, Illinois.

7.  Defendant, Thomas Gibbons, is and at all times relevant hereto was, the currently elected State's Attorney of Madison County, Illinois, and is a resident of Madison County, Illinois.

8.  At all relevant times described herein, all named defendants were working individually and as agents of Madison County, Illinois, a county organized and operated under the laws of the State of Illinois.

9.  All individual defendants are citizens of Illinois.

10. Defendant, Madison County, is and at all relevant times was an Illinois municipal governmental entity and a subdivision of the State of Illinois. It is joined here as a necessary party that will ultimately be responsible for paying any judgment against any of the defendants who are county officials. *Robinson v. Sappington,* 351 F.3d 317, 339 (CA7 2003).

11. The Defendant, Madison County Sheriff's Department, is a department of Madison County government.

12. Plaintiff alleges that each of the person defendants in both their official and individual capacities, performed, participated in, aided and/or abetted in some manner the acts as averred to in this action, proximately caused the damages averred below, and are liable to Plaintiff for the damages and other relief sought in this action.

13. Plaintiff alleges that each of the entity defendants acted through their duly authorized agents and thereby performed, participated in, aided and/or abetted in some manner, and/or ratified the acts as averred to in this action, proximately caused the damages averred below, and are liable to Plaintiff for the damages and other relief sought in this action.

**STATEMENT OF CLAIM SHOWING PLAINTIFF IS ENTITLED TO RELIEF**

**Facts Applicable to All Counts**

14. This action is brought pursuant to 42 U.S.C. §1983 to redress the actions of certain employees and officials of Madison County, Illinois, under color of law, which deprived Bradley Lavite of rights secured to him by the First and Fourteenth Amendments to the United States Constitution.

15. 42 U.S.C. §1983 provides in pertinent part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law".

16. Madison County, Illinois is a county having 2 or more posts, camps, chapters or detachments of military veterans organizations chartered by the Congress of the United States

17. The Veterans Assistance Commission of Madison County, Inc. (VAC) is a central assistance committee duly organized under section 9 of the Illinois Military Veterans Assistance Act (330 ILCS 45/9).

18. Prior to serving as VAC Superintendent, and while serving his country during Iraqi Freedom I & II, Lavite was exposed to multiple detonations of improvised explosive devices (IED's) and engagements with enemy forces, and suffered serious injuries in combat.  Bradley Lavite has been awarded the Bronze Star Medal for Meritorious Service, the Army Accommodation Medal with Valor for Meritorious Achievement, the Combat Action Badge, 3 awards of the Army Achievement Medal, the Army Reserve

Component Achievement Medal in 1999, 2002, 2003, 2007 and 2010, 2 awards of the National Defense Service Medal, the Global War on Terrorism Service Medal, the Armed Forces Reserve Medal with "M" Device, and 3 awards of the Army Service Components Overseas Training Ribbon. Since 2004, Bradley Lavite has been under the care of the OEF/OIF PTSD Clinical Team at the St. Louis Veterans Administration Medical Center at Jefferson Barracks. He has been actively involved in all recommended treatments and has been compliant since beginning treatment at the VA Medical Center.

19. When he began as Superintendent in 2009, Lavite was instrumental in setting up the structure of the first veterans' alternative treatment court in the State of Illinois, only the third such court in the nation. Although there was plenty of contributors, a flow chart created by Lavite that appears on page 55 of a June, 2010 Governor's Task Force Report on Veterans and Service Members Courts published by the Southern Illinois University School of Law, proves that Lavite was instrumental in setting up this court. This flow chart which predates the passage of the Veterans' Court Act of 2010 demonstrates that initially, the VACs of the state were to play an integral part of the Veterans' Court System.

20. On August 17, 2010 a not-for-profit corporation, "Friends of McAtac Foundation" was incorporated[1] with the stated purpose of raising funds for this new veterans' court, funds that would directly benefit veterans that come into contact with the Madison County court system. In this same month, the Madison County Veterans' court won the

---

[1] As of the filing of this complaint, plaintiff is uncertain whether this was an incorporation or the resurrection of a previously formed not-for-profit by the same name that was involuntarily dissolved in 2006.

Phillip H. Chapman award from the Foundation for the Improvement of Justice out of

Georgia, resulting in a $10,000.00 donation. Superintendent Lavite flew to Georgia with

then Veterans' Treatment Court Judge Charles Romani to pick up the award. In

November, 2010, the Madison County Bar Association donated $5,000.00 to the

Foundation. Later in January, 2013, various County Departments and the VAC hosted a

gala which raised $15,000.00, for a total raised for direct aid to veterans of $30,000.00,

known to Lavite at that time.

21.  On June 11, 2010, the Veterans and Servicemembers Court Treatment Act was

approved by the Governor and became the law in Illinois. The final version of the Act, as

passed, limited the definitions to include "IDVA" and "VA", but excluded "VAC". The

Illinois Department of Veterans Affairs (IDVA) and the United States Department of

Veterans Affairs (VA) are very different organizations than the VAC's of Illinois. The

United States Veterans Administration is funded by federal money and the Illinois

Department of Veterans Affairs is funded from the State of Illinois budget and

appropriations. The Madison County VAC funding is limited to local property taxes from

Madison County taxpayers. From the beginning and throughout the setup of the

Madison County Veterans court in 2009 and early 2010, the IDVA and the VA had

nothing to do with the screening process of the court. During that time the Madison

County VAC, without the assistance in any way of the IDVA or the VA, developed the

procedure to screen veterans for eligibility to participate in the alternative treatment

court. During that time Superintendent Lavite completed all of the screenings until the

VAC applied for and was awarded a federal Veterans Treatment Court Grant. Upon

receiving the grant, the VAC supplied at least one of its Veterans Service Officers as the permanent screener for the court. During that time, VAC employee, Nicolette Watson, was the service officer who usually performed such screening and became very familiar with veterans' alternative treatment court personnel, including the St. Louis VA Medical Center Veterans' Justice Outreach Social Worker, Matthew Miller. Upon discovering that the VACs of Illinois had been excluded from the definitions of the Act and having received no explanation why they were omitted when they were part of the flow chart referenced above, Lavite began withdrawing VAC support for the court. This required the county to adjust personnel responsibilities to fill the void and perform eligibility screenings.

22. In 2012, after facing a third straight year of budget cuts to the Madison County Probation Department, Madison County Administrator, Joseph Parente, along with Chief of Probation Judy Dallas approached Lavite in his role as Superintendent of the VAC and requested that he use some of the VAC's budget to pay the salary of a probation department employee whose position was facing elimination due to budget cuts. Section 10 of the Illinois Veterans' Assistance Act expressly provides that VAC employees are not county employees. Lavite rejected their request.

23. In August, 2010, Lavite was offered and accepted a position on the Board of the Friends of McAtac Foundation. In the spring of 2013, shortly after the gala co-hosted by the VAC mentioned above, at the request of Lavite, the "Friends of McAtac Foundation" Board conducted a meeting to discuss expenditure of Foundation funds and the framework for future meetings. The meeting that Lavite requested was the only one that was ever set-

up and attended by members since the time he came on the board. At this 2013

meeting, it was proposed that at least part of the $30,000.00 raised as mentioned above

be spent to send several judges and probation department employees to attend an

alternative treatment court conference in Anaheim, California. Lavite voiced his

objection and dissent for the reason that those funds had been raised on the

representation that they would be used for direct benefit to veterans. Lavite voiced his

opinion that each department, should they wish to send personnel, could do so using

that department's appropriated budgets. There was no resolution of the issue at that

meeting and Lavite has not been invited to and has no knowledge of any subsequent

meeting of the Foundation Board.

24. At the meeting, Lavite produced a copy of the Veterans' Treatment Court Act to discuss

how the VACs were not included in the Act and had no legal obligation or standing to

assist or participate in the treatment court. The Madison County Public Defender, John

Rakowski, who was also on the Board and in attendance at the meeting, vehemently

opposed Lavite's speech and opinion and snatched the document out of Lavite's hands

and made a statement to the effect that "we interpret the laws the way we want

around here". Lavite began packing up his materials to leave and made the statement

that he was the lone minority on the board and that decisions regarding the use of the

funds had already been made. No vote was ever taken and Lavite has no idea how any

of the funds were utilized and for what purpose. It was discussed prior to ending the

meeting that no decisions would be made regarding how best to use the funds until

every board member had a chance to weigh-in and discuss at a future meeting. Public

Defender John Rakowski was appointed to be the point of contact for submitting suggestions and gathering ideas. After not hearing from anyone regarding how best to utilize the funds, Lavite drafted the only proposal regarding how best to distribute the funds (attached and incorporated herein as **Exhibit A**). No response was ever received despite it being distributed to board members via Judge Richard Tognarelli. Sometime after this meeting Lavite was removed and replaced on the Board as indicated on foundation annual filings. At no time was Lavite ever notified that he has been removed from the Foundation Board or given a reason for such removal.

25. Since his release from active duty in 2004, Mr. Lavite had not experienced a serious manic episode or highly agitated state, which can occur with people diagnosed with PTSD, until March of 2014. Brought on by a broken and infected tooth, he suffered a PTSD incident and his wife called for assistance.  First responders took Lavite into protective custody and stated to his wife that they were going to transport him to the hospital for care. Lavite's wife was under the impression that he was being transported to the closest local emergency room. Instead, he was taken to a local mental health facility at Gateway Regional Medical Center in Granite City, Illinois. Once at Gateway he was involuntary admitted and his broken and infected tooth remained misdiagnosed and untreated for several days until he demanded that he be seen by a medical Doctor. After requesting medical treatment Lavite waited almost an entire day before he was finally seen by a Nurse Practitioner after he lay on the hallway floor outside of his room. Immediately after being seen by the Nurse, Lavite was provided antibiotics and pain medication.  After receiving limited medical treatment for his tooth, Lavite expressed to

his wife that it was his tooth, she demanded that he be released, so that he could seek

appropriate dental treatment. As a result, Lavite was released and that afternoon his

wife rushed him to a local oral surgeon where the broken tooth was surgically extracted.

Upon finally being treated and released Lavite resumed his normal working duties and

family life. He continued to receive outpatient medical treatment at the VA Medical

Center in St. Louis, Missouri for both his physical and mental health. Nothing about this

incident occurred on county property no one was injured and no property damage

occurred.

26. During the time that Lavite remained away from the VAC office in 2014, VAC employee,

Nicolette Watson, confronted then VAC office manager C.J. Lucy-Yarian, and Veterans'

Service Officer, Timothy Turner, with the definition of a medical condition and stated

that the Veterans' Justice Outreach Social Worker from the St. Louis, MO VA Medical

Center, Matthew Miller, told her that he had examined Major Lavite's medical records

and that he felt Lavite suffered from that particular condition. Both Mrs. Yarian and Mr.

Turner expressed to Nicolette that they felt that Lavite did not in fact have that

condition and that it was very concerning that she and Mr. Miller had been discussing

Lavite and his medical treatment without his consent.

27. The Madison County Veterans' Court is a voluntary system and the Veterans' Justice

Outreach Social Worker has authority to access a veteran's private medical records only

if that veteran consents after volunteering to participate in the alternative treatment

court system. At no time did Lavite participate as a defendant or patient in the Madison

County Veterans Court system, nor did he otherwise consent to access to his medical records.

28. Between May 28 through May 31, 2014, probation department personnel as well as some of the Madison County circuit court judges attended the 20th annual training conference of the National Association of Drug Court Professionals in Anaheim, California, the same trip referred to in paragraph 23 above. Nicolette Watson was the only VAC employee who accompanied the Madison County personnel who went on this trip.

29. On or about March 5, 2015, while at his personal residence in Wood River, Illinois, both Lavite and his family recognized that he was in a highly agitated state and they called 911. When first responders arrived, Lavite's family advised them that Lavite was a Veteran and requested to have an ambulance take him to the VA Medical Center in St. Louis, Missouri for treatment. The first responders advised Lavite and his family that they were not going to summon an ambulance and that they were instead going to place him in a squad car and take him to a holding cell. Once in the holding cell Lavite continued to experience PTSD related symptoms and was placed back into a patrol car for transport to the local mental health facility in Granite City, Illinois where he had been previously misdiagnosed and left untreated. With first responders refusing to follow Lavite and his family's request that he be transported via ambulance to the VA Medical Center, while in transit, Lavite screamed at the driver and eventually kicked out the rear windows of the Wood River police squad car. Eventually, after the squad car pulled to a stop, first responders conceded to Lavite and his family's wishes and had him

transported via ambulance from the side of the highway to a closer emergency room. From there Lavite was transferred to the VA Medical Center for treatment. This 2015 incident did not occur on county property, and again, no one was injured.

30. On March 6, 2015, County Administrator Parente sent a letter to Robert Sedlacek, the President of the VAC Executive Board. Without specifics, the letter referred to complaints Parente and other county personnel had received from VAC employees related to Lavite's conduct in the VAC office. In this letter, despite section 10 of the Military Veterans' Assistance Act expressly stating that VAC employees are not county employees, and said section specifically exempting VAC employees from the operation and provisions of any civil service act or laws of the state of Illinois, Administrator Parente attempted to convince the VAC Executive Board that it was subject to, and required to follow, Madison County Personnel Policies. Plaintiff is without knowledge at this time whether Parente knew of Lavite's condition and the events on March 5, 2015 at the time he penned this letter.

31. After Lavite was admitted to the VA Medical Center he was treated and his medications adjusted. By letter dated March 18, 2015, Lavite's VA psychiatrist, Dr. Jane Loitman, advised all concerned about his hospitalization and that he would be able to return to work without limitations on March 23, 2015. A copy of that letter is attached and incorporated herein as **Exhibit B**.

32. On March 20, 2015, County Administrator Parente issued a "standing order" that Lavite not be permitted on county property and if he appears, he is to be arrested for trespassing.  Lavite has since been banished from county property, and has been forced

to work remotely from the various public libraries, American Legions, Disabled American

Veterans offices, VFWs, and other veterans' service organization facilities as the VAC

Superintendent.

33. On or about March 20, 2015, County Administrator Parente telephoned VAC Board

President, Robert Sedlacek and demanded that Lavite be fired from his position.

34. By letter dated March 30, 2015, VAC Executive Board President, Robert Sedlacek and

Vice-president, Ronnie Hicks responded to Administrator Parente, which letter is

attached as **Exhibit C**.

35. On April 10, 2015, the VAC Executive Board unanimously resolved to hire an attorney to

represent it and its Superintendent in what that Board called an unfair and unwarranted

attack by Joseph Parente in his role as county administrator.

36. On May 4, 2015 plaintiff's counsel called and spoke with Lt. Trent of the court house

security division of the Madison County Sheriff's Department to advise that Mr. Lavite

would be returning to his office that afternoon. At that time, Lt. Darin Trent advised

plaintiff's counsel that the March 20, 2015 directive was still in effect and that the

Sheriff's Department was under a "standing order" to the effect that if Mr. Lavite were

to appear on county property, he would be asked to leave, and if he refused, he would

be arrested for trespassing.

37. The VAC executive board has at all times stood behind Superintendent Lavite and

demanded his return to his office and to county property. The Defendants continue to

refuse to permit Lavite on county property or to return to his office in the county

administration building.  Defendants have repeatedly and intentionally denied Lavite the

right to assemble on county property. The Defendants are aware that Lavite's

psychiatrist has cleared him to return to work, yet the Defendants continue to take

affirmative action detrimental to Lavite. The Defendants are depriving Lavite the right to

speak freely and to assemble on public property.

38. During the more than 14 months since these county officials banished Lavite from

county property, Lavite has demonstrated time and again that he poses no threat to

anyone or anything. Among other things, on March 17, 2016, Lavite responded side-by-

side with other first responders to the residence of a combat veteran who had called the

VAC office and told the service officer that she "was just going to end it". He was able to

determine that due to miscommunication, this veteran was unable to secure medication

required to treat her mental health condition. He arranged for the medication and

transported this Veteran directly to pick up needed medication. This combat veteran

recovered and remains today a contributing factor in our society. On another occasion,

Superintendent Lavite attended a benefit for veterans with Illinois Senator William

Haine who professed that he did not feel threated by Lavite at all. Lavite has not

suffered any other manic episodes to date.

39. Specifically, this action challenges Defendants' denial of Plaintiff's rights secured under

the First and Fourteenth Amendments to the United States Constitution (Art. I, U.S.

Constitution, Amend XIV, U.S. Constitution), and 42 U.S.C. 1983.

**FIRST CLAIM FOR RELIEF**

**Count I – First Amendment Right To Assemble**

40. Plaintiff incorporates by reference and realleges paragraphs 1 to 39 of this complaint.

41. The above described conduct by defendants violated and continues to violate the right of the plaintiff to peaceably assemble on county property which is guaranteed by the First Amendment of the United States Constitution.

42. Plaintiff requests that the court issue an injunction ordering that the plaintiff be permitted access to his office located in the Madison County Administration Building, and that the court award compensatory and punitive damages in an amount to be determined according to proof by plaintiff against all defendants in their individual capacities.

## SECOND CLAIM FOR RELIEF

### Count II – First Amendment Right to Free Speech

43. Plaintiff incorporates by reference and realleges paragraphs 1 to 42 of this complaint.

44. The ban on Lavite's presence on county property is in fact retaliation against him for having voiced his objection to the expenditure of Friends of McAtac Foundation funds to send judges, county probation department personnel and others to an alternative court conference in California, when those funds were raised upon the representation that they would be used only for direct benefit to veterans, his withdrawal of VAC support of the veterans' alternative court, and his refusal to use VAC funds to pay the salary of a county probation department employee, all in violation of his right to free speech.

45. The above referenced coercion upon the VAC Executive Board to terminate Lavite is a direct attempt to suppress Lavite's right to voice his objection to the expenditure of Friends of McAtac Foundation funds to send judges, county probation department personnel and others to an alternative court conference in California, when those funds

were raised upon the representation that they would be used only for direct benefit to
veterans, his withdrawal of VAC support of the veterans' alternative court, and his
refusal to use VAC funds to pay the salary of a county probation department employee,
all in violation of his right to free speech and freedom of expression.

46. Plaintiff requests that the court issue an injunction ordering that plaintiff be permitted
access to his office located in the Madison County Administration Building so as to end
the attempted coercion and interference with Plaintiff's right to free speech. Plaintiff
further requests that he be awarded compensatory and punitive damages in an amount
to be determined according to proof by plaintiff against all defendants in their individual
capacities.

### THIRD CLAIM FOR RELIEF

### Count III – Fourteenth Amendment Right to Due Process

47. Plaintiff incorporates by reference and realleges paragraphs 1 to 46 of this complaint.

48. Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy
Handbook which addresses "resolution and investigations" of work place violence
incidences provides that "[i]n cases where the perpetrator is not a County employee or
in any other case the County deems advisable, law enforcement officials may be asked
to conduct the investigation."

49. There was never a referral to law enforcement officials prior to Parente's unilateral fiat.
The factual contentions in this paragraph are made on information and belief and will
likely have evidentiary support after a reasonable opportunity for further investigation
and discovery (Rule 11(b)(3)).

50. By failing to follow their own policies and procedures, plaintiff was deprived of process that was due in violation of the Fourteenth Amendment of the United States Constitution.

51. Plaintiff requests that the court issue an injunction ordering that the plaintiff be permitted access to his office located in the Madison County Administration Building, that County Administrator Parente's unilateral fiat without due process be dissolved, and that the court award compensatory and punitive damages in an amount to be determined according to proof by plaintiff against all defendants in their individual capacities.

### FOURTH CLAIM FOR RELIEF

### Count IV– Violation of Due Process Against Sheriff

52. Plaintiff incorporates by reference and realleges paragraphs 1 to 51 of this complaint.

53. As mentioned above in paragraph 48 of this complaint, Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook which addresses "resolution and investigations" of work place violence incidences provides that "[i]n cases where the perpetrator is not a County employee or in any other case the County deems advisable, law enforcement officials may be asked to conduct the investigation."

54. John Lakin, as duly elected Sheriff of Madison County had the duty to assure there were adequate rules and procedures in effect on how to conduct an investigation it might be called upon to perform pursuant to Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook.

55. John Lakin failed to have in place such rules and procedures. As a direct and proximate result of such failure, Bradley Lavite has been deprived of due process guaranteed to him under the Fourteenth Amendment of the US Constitution. The factual contentions in this paragraph are made on information and belief and will likely have evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 11(b)(3)).

56. Plaintiff requests that the court issue an injunction ordering that this defendant lift the "standing order", that the plaintiff be permitted access to his office located in the Madison County Administration Building, and that the court award compensatory and punitive damages in an amount to be determined according to proof by plaintiff against all defendants in their individual capacities.

### FIFTH CLAIM FOR RELIEF

### Count V – Violation of Due Process Against Sheriff
### Alternative Allegations to Count IV

57. Plaintiff incorporates by reference and realleges paragraphs 1 to 56 of this complaint.

58. As mentioned above in paragraph 48 of this complaint, Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook which addresses "resolution and investigations" of work place violence incidences provides that "[i]n cases where the perpetrator is not a County employee or in any other case the County deems advisable, law enforcement officials may be asked to conduct the investigation."

59. John Lakin, as duly elected Sheriff of Madison County had the duty to assure there were adequate rules and procedures in effect on how to conduct an investigation it might be

called upon to perform pursuant to Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook.

60. Pleading in the alternative to Count IV, John Lakin and the Madison County Sheriff's Department had in place such rules and procedures, but failed to implement or follow such rules and procedures. As a direct and proximate result of such failure, Bradley Lavite has been deprived of due process guaranteed to him under the Fourteenth Amendment of the US Constitution. The factual contentions in this paragraph are made on information and belief and will likely have evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 11(b)(3)).

61. Plaintiff requests that the court issue an injunction ordering that this defendant lift his "standing order", that the plaintiff be permitted access to his office located in the Madison County Administration Building, and that the court award compensatory and punitive damages in an amount to be determined according to proof by plaintiff against all defendants in their individual capacities.

### SIXTH CLAIM FOR RELIEF

### Count VI – Violation of First Amendment Right to Assemble Against State's Attorney

62. Plaintiff incorporates by reference and realleges paragraphs 1 to 61 of this complaint.

63. At all times relevant, it was the duty of the Madison County State's Attorney, Thomas Gibbons, to "give his opinion, without fee or reward, to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned." (55 ILCS 5/3-9005(a)(7)).

64. The Madison County States Attorney, Thomas Gibbons, and/or a yet unnamed assistant state's attorney, advised County Chairman Alan Dunstan and County Administrator, Joseph Parente, that banning Lavite from county property was a legally permissible course of action and did not violate any of his constitutional rights. The factual contentions in this paragraph are made on information and belief and will likely have evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 11(b)(3)).

65. As a direct and proximate result of that advice, County Administrator, Joseph Parente, at the direction of County Chairman, Alan Dunstan, implemented, and, as of the filing of this complaint, has maintained a "standing order" banning Lavite from county property in violation of Lavite's constitutional right to peaceably assemble on public property.

66. The actions of the Madison County State's Attorney, as alleged in this claim were done with reckless disregard for Lavite's constitutional rights.

67. Plaintiff requests that the court issue an injunction ordering that the plaintiff be permitted access to his office located in the Madison County Administration Building, and that the court award compensatory and punitive damages in an amount to be determined according to proof by plaintiff against all defendants in their individual capacities.

**SEVENTH CLAIM FOR RELIEF**

**Count VII – Violation of First Amendment Right to Assemble Against State's Attorney Alternative Theory**

68. Plaintiff incorporates by reference and realleges paragraphs 1 to 67 of this complaint.

69. At all times relevant, it was the duty of the Madison County State's Attorney, Thomas Gibbons, to "give his opinion, without fee or reward, to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned." (55 ILCS 5/3-9005(a)(7)).

70. As an alternative to the Sixth Claim for Relief, the Madison County States Attorney, Thomas Gibbons, and/or a yet unnamed assistant state's attorney, having knowledge of the standing order banning Lavite from county property, failed to advise County Chairman Alan Dunstan and County Administrator, Joseph Parente, that banning Lavite from county property was not a legally permissible course of action and that such ban would violate Lavite's constitutional right to peaceably assemble. The factual contentions in this paragraph are made on information and belief and will likely have evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 11(b)(3)).

71. As a direct and proximate result of the failure to give his opinion that banning Lavite from county property was unconstitutional, Lavite's constitutional right to peaceably assemble on public property has been and continues to be violated.

72. The omissions of the Madison County State's Attorney, as alleged in this claim were done with reckless disregard for Lavite's constitutional rights.

73. Plaintiff requests that the court issue an injunction ordering that the plaintiff be permitted access to his office located in the Madison County Administration Building, and that the court award compensatory and punitive damages in an amount to be

determined according to proof by plaintiff against all defendants in their individual

capacities.


**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the court:

A.  Issue an injunction ordering the defendants to permit plaintiff access to county property

and lift the standing order banning him from such property;

B.  Award compensatory damages in an amount to be determined according to proof by

Plaintiff against all defendants in their individual capacities;

C.  Award punitive damages in such other amount as the jury may determine is sufficient to

punish defendants for and deter others from committing the constitutional violations

alleged in this complaint;

D.  Award plaintiff his costs, expenses and reasonable attorney's fees pursuant to, among

other things, 42 U.S.C. §1988;

E.  Enter judgment against Madison County, Illinois in the amount awarded to the plaintiff

against any and all of the individual defendants as damages, attorney's fees, costs and

interest, an/or for any settlement entered into between plaintiff and defendants; and

F.  Grant such other and further relief as the court may deem just and proper.


/s/ *Thomas W. Burkart*

Thomas W. Burkart  #06191030
Attorney for Plaintiff
Burkart Law Office
130 W. State Street
P.O. Box 447

Hamel, Illinois 62046-0447
618) 633-2631
Fax:  618) 633-9901
Email:  tburkart@burkartlaw.com
Secondary email: kburkart@burkartlaw.com



# Madison County Government

## Veterans' Assistance Commission

**Bradley A. Lavite, Superintendent**
Madison County Administration Building
157 North Main Street, Suite 115 * Edwardsville, IL  62025-1963
Phone: 618-692-7040, ext. 4554 * Fax: 618-692-8958
Office Hours: Monday - Friday, 8:30 a.m. - 4:30 p.m.



**TO:**    MC-ATAC Foundation Board Members          **DATE:**  March 13, 2014

**FROM:**  Bradley Lavite, VAC Superintendent        **RE:**    MC-ATAC Foundation Fund Distribution

Justice-Involved Veterans who reside in Madison County may be served by any of the three (3) alternative courts (Veterans' Treatment Court, Mental Health Court, and Drug Court), as well as may utilize the auxiliary services provided by the Madison County Child Advocacy Center (CAC) and the Third Judicial Circuit Pro Bono Legal Services. Since there has been no clear-cut policy on the distribution of MC-ATAC Funds, I would like to make the following recommendations:

1. The current funds in the Veterans' Treatment Court (VTC) should be equally distributed among the three (3) alternative courts (VTC, Mental Health Court, and Drug Court) into the already established separate accounts. Current and prospective funds should be utilized appropriately by the department heads using polices established by the MC-ATAC Foundation Board, as discussed on February 19, 2014. The MC-ATAC Foundation Board should discuss, vote, and approve a list of appropriate services for which the funds may be utilized.

   Each alternative court should do the following:

   a. A minimum of fifteen percent (15%) should specifically fund Child Advocacy to provide and to support direct services to the dependents of Veterans who are involved in the criminal justice system.

   b. A minimum of five percent (5%) should specifically fund the Third Judicial Circuit Pro Bono Veterans' Subcommittee to provide legal pro bono services to Madison County Veterans.

   c. All remaining funds must be used in direct support of services provided to Veterans within the Madison County community who have criminal charges and/or pending legal issues.

2. The department heads should track and manage reporting of how the funds have been distributed to the MC-ATAC Foundation Board on a regular basis.

3. Any future fundraising or funds that become available should be distributed equally as outlined in relation to the above-mentioned model.

# EXHIBIT A



**DEPARTMENT OF VETERANS AFFAIRS**
**St. Louis VA Medical Center**
**#1 Jefferson Barracks Drive**
**St. Louis, MO  63125-4199**

**In reply refer to:**   PTSD—OEF/OIF
116A-JB

Date: 03/18/15

TO:  To whom it may concern

RE:    Lavite, Bradley

I am writing this letter on behalf of Mr. Lavite who was seen today in our clinic.  He has been seen at
the OEF/OIF PTSD Clinical Team at the St. Louis VA Medical Center since 2004.  He was recently
hospitalized at this VAMC  and has been absent from work since 3/12/15.  He will be able to return to
work on site 3/23/15 with no limitations.  He will continue to follow up  with our clinic.

Sincerely,

Jane E Loitman, MD, MBA, MS
PTSD OIF/OEF
St. Louis VA Medical Center

# EXHIBIT B



# Madison County Government

## Veterans' Assistance Commission
### Bradley A. Lavite, Superintendent
Madison County Administration Building
157 North Main Street, Suite 115 * Edwardsville, IL 62025-1963
Phone: 618-296-4554 * Fax: 618-692-8958
Office Hours: Monday - Friday, 8:30 a.m. - 4:30 p.m.



March 30, 2015

Mr. Joseph Parente
County Administrator
Administration Building
157 North Main Street
Edwardsville, IL 62025

Dear Mr. Parente:

The Executive Board of the Veterans' Assistance Commission (VAC) of Madison County Inc. has received your request to meet on Wednesday, April 1, 2015, at 3:00 p.m. At this time, the VAC Board is not ready to sit down and to discuss Superintendent Bradley Lavite. He has requested reasonable accommodations, and the VAC Board is still waiting on additional information so that it can best assist him in returning to his position of serving the Veteran population of Madison County, the State of Illinois, and our great Nation. We, the VAC Board, intend to fully support Superintendent Lavite as he works through his covered disabilities under the Americans with Disabilities Act (ADA).

It is the VAC Board's understanding that Superintendent Lavite has yet to appear in court. The VAC Board does not want to interfere with or to be unduly influenced by any entity until Superintendent Lavite has had his day in court regarding any alleged charge. It also is the VAC Board's understanding that a Special Prosecutor has been requested and that Superintendent Lavite has retained legal counsel to best resolve any alleged allegation. This is, without a doubt, the best way that he can proceed at this time.

When the VAC Executive Board feels that it is the appropriate time to invite any said member(s) of the County to meet, it will be as a guest at a VAC Executive Board Meeting, which is a closed meeting. Superintendent Lavite and VAC legal counsel will be present at any such meeting to properly oversee and to provide proper counsel regarding any discussions and decisions.

Once again, the VAC Executive Board would like to reiterate that it fully supports Superintendent Lavite and will not be swayed until all facts are properly laid out and issues can be resolved. Superintendent Lavite has shown nothing but the highest regard for our local Veteran population, as well as for this State and for this Nation. He has proven time and time again that he has our Veterans' best interests at heart. Therefore, the VAC Board can only provide him with the same compassion and concern that he has shown towards countless Veterans time and time again during his tenure. Superintendent Lavite has been one of the best superintendents the VAC has had, and he continues to serve the Veteran population well. In fact, many Veterans who pass through the doors of the VAC office suffer with the same illnesses and disabilities as Superintendent Lavite, yet they are not restricted to access services in any way. The VAC Executive Board wants to ensure

**Exhibit C**



# Madison County Government

## Veterans' Assistance Commission
### Bradley A. Lavite, Superintendent
Madison County Administration Building
157 North Main Street, Suite 115 * Edwardsville, IL  62025-1963
Phone: 618-692-7040, ext. 4554 * Fax: 618-692-8958
Office Hours: Monday - Friday, 8:30 a.m. - 4:30 p.m.



Mr. Joseph Parente
March 30, 2015
Page 2


that Superintendent Lavite is afforded equal opportunity for persons with disabilities in employment, state and local government services, and public accommodations.

The VAC Executive Board will not leave a fellow fallen, disabled combat Veteran, who is a highly decorated Service Member, behind. The VAC Board will continue to fight to ensure that all Veterans are aware of and are able to receive the benefits and the protections afforded them under law and according to the mission of the VAC.

Sincerely,



Robert Sedlacek
President

Ronnie Hicks
First Vice President