IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRADLEY A. LAVITE,

                Plaintiff,

v.

ALAN J. DUNSTAN,
JOSEPH D. PARENTE,
JOHN D. LAKIN,
THE MADISON COUNTY SHERIFF'S DEPARTMENT,
THOMAS GIBBONS, AND
MADISON COUNTY, ILLINOIS,

                Defendants.           No. 16-cv-00882-DRH-RJD

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

## I.    Introduction

Before the Court are two motions to dismiss plaintiff Bradley Lavite's ("plaintiff" or "Lavite") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 56).

First, defendants John D. Lakin and the Madison County Sheriff's Department seek dismissal on the grounds that (1) the suit is duplicative, (2) the suit is barred by the prohibition against claim splitting, (3) the Madison County Sheriff's Department is an improper party, (4) the suit fails to state a Section 1983 claim, and (5) the suit fails to plead plausible First Amendment retaliation claims (Counts I and II) or Due Process violations (Counts VI and VII). (Doc. 61).

Second, defendants Alan J. Dunstan, Joseph D. Parente, Thomas D. Gibbons, and Madison County, Illinois seek dismissal on numerous grounds, including that (1) the suit is duplicative, (2) the suit is barred by the prohibition against claim splitting, (3) the suit is barred by the *Rooker-Feldman* doctrine, (4) the suit fails to plead plausible First Amendment claims (Counts I, II, VI, and VII) or Due Process violations (Count III) and fails to give the defendants fair notice of the allegedly wrongful acts committed by each defendant, (5) the Court should decline to exercise supplemental jurisdiction over the plaintiff's sole state law claim (Count VIII), and (6) the suit fails to plead *Monell* liability against defendants Gibbons, Parente, and Dunstan in their official and individual capacities. (Doc. 62).

Plaintiff filed a response opposing defendants' motions to dismiss (Doc. 65) and defendants Lakin and the Madison County Sheriff's Department filed a Reply (Doc. 69). For the reasons explained below, the Court **GRANTS IN PART and DENIES IN PART** defendants Lakin and the Madison County Sheriff Department's motion to dismiss (Doc. 61) and **DENIES** defendants Dunstan, Parente, Gibbons, and Madison County's motion to dismiss (Doc. 62). The Court also **DENIES** plaintiff's motion to strike (Doc. 66).

## II.     <u>Background</u>

Plaintiff Bradley A. Lavite is a decorated U.S. military veteran who has served as superintendent of the Veterans' Assistance Commission of Madison County, Illinois ("VAC") since 2009 (Doc. 56, ¶¶ 17–18). Prior to 2009, Lavite was

deployed abroad where he was "exposed to multiple detonations of improvised explosive devices (IEDs) and engagements with enemy forces, and suffered serious injuries in combat" (*Id.* at ¶ 18). Since his release from active duty in 2004, Lavite has been under the care of the OEF/OIF PTSD Clinical Team at the St. Louis Veterans Administration Medical Center at Jefferson Barracks ("VA Medical Center") and has been "compliant" and "actively involved in all recommended treatments" (*Id.* at ¶¶ 18, 25).

In 2010, Lavite helped create the first veterans' alternative treatment court ("alternative treatment court") in the state of Illinois and in August of the same year, Lavite joined the board of the Friends of McAtac Foundation (the "McAtac Foundation"), a non-profit formed "with the stated purpose of raising money for" the alternative treatment court (*Id.* at ¶¶ 20, 23). Between 2010 and 2013, Lavite and the McAtac Foundation participated in fundraising initiatives that raised approximately $30,000 (*Id.* at ¶¶ 19–20).

From the inception of the alternative treatment court in 2009 through mid-2010, the VAC was solely responsible for developing and implementing screening procedures to determine eligibility for the program (*Id.* at ¶ 21). In June 2010, Illinois enacted the Veterans and Servicemembers Court Treatment Act which Lavite claims excluded the VAC (*Id.*). In response, Lavite began to withdraw VAC support for the alternative treatment court, which shifted the burden of performing eligibility screenings from the VAC to Madison County (*Id.*).

In 2012, amidst ongoing budget cuts, defendant Joseph Parente, the Administrator of Madison County, along with an employee from the Madison County Probation Department, approached Lavite in his capacity as VAC superintendent and requested that funds from the VAC's budget be used to pay the salary of a probation department employee whose position was at risk of elimination (*Id.* at ¶ 22). Lavite declined Parente's request (*Id.*).

In early 2013, the board of the McAtac Foundation met, at Lavite's request, to discuss the expenditure of the funds raised by the foundation. (*Id.* at ¶ 23). At this meeting, one or more unspecified individuals proposed that a portion of the $30,000 raised by the foundation be used to send several Madison County judges and probation department employees to an alternative treatment court conference in California (*Id.*). Lavite opposed this proposal and suggested instead that each Madison County department should pay for its own personnel to attend the conference (*Id.*).

At this meeting, Lavite also stated that, under his interpretation of the Illinois Veterans and Servicemembers Court Treatment Act, the Madison County VAC was not required to participate in the alternative treatment court (*Id.* at ¶ 24). Lavite claims that the Madison County Public Defender[1] "vehemently opposed" Lavite's statements and interpretation of the statute and "snatched" the copy of the statute that Lavite was holding (*Id.*). The board postponed the vote on the issue of fund expenditure until a later meeting, at which all board members would have an opportunity to weigh in and discuss the issue (*Id.*). Lavite then

[1] Public Defender John Rakowski is not a party to this lawsuit.

drafted and circulated to the board his own proposal recommending the best use of the money, but he received no response (*Id.*). Subsequent McAtac Foundation annual filings no longer listed Lavite as a board member, although he was never notified of his removal from the board (*Id.*). Lavite was not notified of any other McAtac Foundation board meetings and does not know whether the board ever decided how to use the funds raised by the McAtac Foundation (*Id.* at ¶¶ 23–24).[2]

In March 2014, Lavite suffered a "PTSD incident," which he describes as a "manic episode or highly agitated state," triggered by a broken and infected tooth (*Id.* at ¶ 25). After some confusion and delay in his treatment,[3] Lavite had oral surgery to remove the infected tooth and thereafter resumed his "normal working duties and family life" (*Id.*) This was Lavite's first such incident since his release from active military service in 2004 (*Id.*). Lavite claims that, during his absence from the VAC office in 2014, a social worker from the VA Medical Center discussed Lavite's medical condition with a VAC employee without Lavite's consent (*Id.* at ¶ 26).

On or about March 5, 2015, Lavite experienced another PTSD incident at his residence in Wood River, Illinois, when his family recognized that he was in a "highly agitated state" and called the police (*Id.* at ¶ 29). Lavite's family asked the first responders to transport him via ambulance to the VA Medical Center, but they instead placed Lavite in a police car and took him to a holding cell (*Id.*). After

---

[2] The following year, several Madison County circuit judges and Probation Department employees and one VAC employee attended the 20th annual training conference of the National Association of Drug Court Professionals in Anaheim, California (*Id.* at ¶ 28).

[3] Lavite was initially transported to the local mental health facility where he was involuntarily admitted and his infected tooth remained untreated for several days (*Id.* at ¶ 25).

continuing to exhibit PTSD-related symptoms, Lavite was placed in the back of a police car bound for the local mental health facility where he had been involuntarily admitted for several days the year before (*Id.*). While in the police car, Lavite "screamed at the driver and eventually kicked out the rear windows" of the car (*Id.*). He was subsequently transported to a nearby emergency room and then to the VA Medical Center (*Id.*). Lavite's psychiatrist at the VA Medical Center eventually cleared Lavite to return to work without limitations on March 23, 2015 (*Id.* at ¶ 31, Ex. B).

On March 6, 2015, County Administrator Parente sent a letter to the President of the VAC Executive Board that referenced, "[w]ithout specifics," complaints Parente and other county personnel had received from VAC employees related to Lavite's conduct in the VAC office (*Id.* at ¶ 30). In the letter, Parente "attempted to convince" the VAC Executive Board that it was subject to, and required to follow, Madison County Personnel Policies (*Id.*).

On March 20, 2015, Parente issued a "standing order" that Lavite was prohibited from entering his VAC office in the Madison County Administration Building, and that he would be arrested for trespassing if he defied the order (*Id.* at ¶ 32). On or about March 20, 2015, Parente telephoned the VAC Board President and "demanded that Lavite be fired from his position."

On May 4, 2015, Lavite's attorney spoke with Lt. Darin Trent, a member of the courthouse security division of the Madison County Sheriff's Department (*Id.* at ¶ 36). Lavite's attorney stated that Lavite would be returning to his office in the

county building later that day (*Id.*). Lt. Trent responded that because Parente's "standing order" was still in effect, Lavite would be asked to leave if he tried to enter the building, and thereafter arrested for trespassing if he refused to leave (*Id.*). Lavite was forced to work remotely during the time he was denied access to his office (*Id.* at ¶ 32).

On June 12, 2016, Lavite filed a complaint for mandamus in Illinois state court against defendants Dunstan, Parente, Madison County Board, and Lakin, seeking to reverse Parente's "standing order" prohibiting Lavite from accessing his office on Madison County property, compel the Madison County Board to pay his salary, and compel the Board to pay the VAC's attorneys' fees associated with the lawsuit (Doc 62-1).

On August 5, 2016, Lavite initiated this federal action, and on May 8, 2017, he filed the operative First Amended Complaint, alleging that the defendants violated his First Amendment right to peaceably assemble on Madison County property (Count I), violated his First Amendment right to free speech by retaliating against him (Count II), and violated his Fourteenth Amendment due process rights by failing to refer an investigation of Lavite's conduct to law enforcement (Count III). Lavite also claims that Sheriff Lakin violated his Fourteenth Amendment due process rights either by failing to assure the existence of adequate rules and procedures to conduct an investigation (Count IV), or, alternatively, by failing to implement or follow such rules and procedures that the Sheriff's Department had in place (Count V). Lavite further alleges that Madison

County State's Attorney Thomas Gibbons violated his Fourteenth Amendment due process rights when Gibbons, with reckless disregard for Lavite's constitutional rights, advised defendants Dunstan and Parente that it was legal to ban Lavite from Madison County property (Count VI), or, alternatively, that Gibbons violated his Fourteenth Amendment due process rights when Gibbons, with knowledge of the "standing order" banning Lavite from county property, failed to advise Dunstan and Parente that the ban was illegal and would violate Lavite's constitutional rights (Count VII). Finally, Lavite seeks accounting and recovery on the grounds that Dunstan, Parente, or another Madison County agent wrongfully assumed control over and withdrew funds from a VAC "special fund" without the knowledge or consent of the VAC (Count VIII).

### III.    Motion to Dismiss

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly* that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although federal pleading standards were retooled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), notice pleading remains all that is required in a complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the

claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'"). In determining whether the allegations in the plaintiff's complaint are sufficient "to raise a right to relief above a speculative level," *Twombly*, 550 U.S. at 555, the Court assumes the truth of all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009).

With these principles in mind, the Court now turns to address merits of the defendants' motions to dismiss.

## IV.    <u>Analysis</u>

### A. Lavite's Complaint Is Not Duplicative Of Or Parallel To His State Case

The defendants urge the Court to dismiss Lavite's federal suit because it is either duplicative of, or parallel to, his pending state proceeding (Doc. 61, pp. 5–6; Doc. 62, pp. 5–6). Defendants Lakin and the Madison County Sheriff's Department rely on *Serlin v. Arthur Andersen & Co*, 3. F.3d 221 (7th Cir. 1993), while defendants Dunstan, Parente, Gibbons, and Madison County cite *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228 for support. The Court addresses the arguments of both groups of defendants on this ground together because they are closely related and ultimately fail for the same reasons.

In situations involving "the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts," the Supreme Court has recognized that "principles of wise judicial administration" may justify

the dismissal of a federal suit where it is duplicative of or parallel to a suit pending in another forum. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, (1976). However, the standard for determining whether dismissal of a federal suit is warranted depends on whether the allegedly duplicative or parallel suit is pending in federal or state court. *Id.*

Where both actions are pending in federal court, "the general principle is to avoid duplicative proceedings." *Id.* District courts are accorded "a great deal of latitude and discretion" in determining whether one federal suit is duplicative of another, and "an abuse of discretion is established only where no reasonable man could agree with the district court." *Id.* at 223–24; *see Serlin*, 3 F.3d at 223.

On the other hand, where, as here, the allegedly parallel cases implicate state-federal concurrent jurisdiction, the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817. The difference in approach between wholly federal concurrent jurisdiction and state-federal concurrent jurisdiction "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Although there may be "exceptional" circumstances permitting the dismissal of a federal suit due to the existence of a parallel state proceeding, "[o]nly the clearest justifications will warrant dismissal." *Id.* at 818–19.

A federal suit is parallel to a pending state case "when substantially the same parties are contemporaneously litigating substantially the same issues in another

forum, thus making it likely that judgment in one suit will have a res judicata effect in the other suit." *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979). Here, res judicata principles of Illinois law would apply to any judgment in Lavite's state case because federal courts are bound by the Full Faith and Credit Act, 28 U.S.C. § 1738, to give a state judgment "the same *res judicata* effect in federal court that it would be given in the court of the rendering state." *LaSalle Nat. Bank of Chicago v. City of DuPage*, 856 F.2d 925, 930 (7th Cir. 1988) (quoting *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987)). Under Illinois law, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1080 (7th Cir. 2011) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 311 (1998)). The Court must therefore determine whether this suit and Lavite's state case arise from a single group of operative facts such that judgment in the state case would likely have a res judicata effect in this case.

At this stage of the proceedings, the Court is not convinced that this suit is parallel to Lavite's state case for purposes of *Colorado River* abstention. Assuming the truth of Lavite's well-pleaded factual allegations and drawing all reasonable inferences in his favor, this case does not arise from the same group of operative facts as Lavite's state case, such that a judgment in the state case would likely have a res judicata effect on this case.

Lavite's state complaint for mandamus arose solely from the directive issued by Parente or another individual, which prohibited Lavite from accessing his office in the Madison County Administration Building (Doc 62–1). Lavite argued that he needed to access his VAC office to perform his duties, and asked the state court to lift the directive banning Lavite from his office, compel the Madison County Board to pay his salary, and compel the Board to pay the VAC's attorneys' fees (Doc 62-1).

On the other hand, Lavite alleges here that the defendants violated his First Amendment rights to freedom of speech and assembly by retaliating against him for his dissenting speech. Lavite points to 2012, when he refused Parente's request for the VAC to pay the salary of a county probation department employee, and to the 2013 McAtac Foundation board meeting, at which he voiced his objection to using funds raised by the foundation to send Madison County officials to an alternative treatment court conference (Doc. 56 at ¶ 23; Doc. 65 at p. 3). Lavite claims that the retaliatory acts included, among other things, unauthorized access to his medical records by a VAC employee in 2014, Parente's March 6, 2015 letter to the VAC, Parente's March 20, 2015 directive banning Lavite from his VAC office, and Parente's March 20, 2015 phone call "demanding" that Lavite be fired (Doc. 56 at ¶¶ 30, 32, 36; Doc. 65 at p. 3). Lavite's First Amendment claims thus arise from a significantly broader set of facts than the state case.

Lavite also contends that defendants Lakin and the Madison County Sheriff's Department violated his Fourteenth Amendment due process rights by failing to

either implement or enforce "rules and procedures" for investigating certain workplace incidents, as required by the Madison County Personnel Policy Handbook (Doc. 56 at ¶¶ 53–55, 58–60). Again, while Lavite's state complaint arose solely from Parente's March 20, 2015 directive banning him from his VAC office, Lavite's due process claims arise from defendants Lakin and the Sheriff Department's alleged inaction in the face of a purported duty to establish and follow certain procedures.

Without more, the Court cannot say that Lavite's federal claims arise from the same group of operative facts as his state claims. Accordingly, the motions to dismiss Lavite's claim on this basis are **DENIED**.

## B. Lavite's Claims Are Not Barred By The Doctrine Of Claim Splitting

Both groups of defendants also argue that the doctrine of claim splitting bars this suit. Claim splitting is a form of res judicata that prohibits a plaintiff from "splitting" a claim by "suing for part of a claim in one action and then suing for the remainder in another action." *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 785 (7th Cir. 2016) (per curiam). Like traditional claim preclusion, the claim splitting doctrine forbids a party from bringing a duplicative lawsuit arising from the same transaction or events underlying a previous suit simply by changing the legal theory. *See Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010). Unlike traditional claim preclusion, however, the doctrine of claim splitting may be applied before either action reaches a final judgment on the merits. *Fleming v.*

*City of E. St. Louis*, No. 15-CV-548-DRH-DGW, 2015 WL 6871131, at *2 (S.D. Ill. Nov. 9, 2015) (Herndon, J.).

For the reasons discussed above, the Court is not presently convinced that Lavite's two suits arise from the same transaction or events. Accordingly, the motions to dismiss Lavite's claim on this basis are **DENIED**.

### C. Lavite's Claims Are Not Barred By The *Rooker–Feldman* Doctrine

Defendants Dunstan, Parente, Gibbons, and Madison County argue that this suit is also barred by the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 60, 664 (7th Cir. 2002)). "Thus, if a claim is barred by the *Rooker–Feldman* doctrine, a federal court lacks subject matter jurisdiction over the case." *Brokaw*, 305 F.3d at 664 (citing *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000)).

Although "[i]n its most straight-forward presentment, the *Rooker–Feldman* doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment," the doctrine also precludes federal jurisdiction over claims that are "inextricably intertwined" with a state court judgment. *Remer*, 205 F.3d at 996. Although it is difficult to determine

which federal claims are "inextricably intertwined with a state judgment," the "pivotal inquiry in applying the doctrine is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Id.*

Here, Lavite is not attempting to challenge or set aside a state court judgment. In fact, the defendants have argued that Lavite's federal claims impermissibly duplicate his state claims, not challenge them. Lavite's state complaint for mandamus arose out of the March 20, 2015 "standing order" that prevented him from accessing his VAC office and was limited to the immediate objectives of regaining access to his VAC office, obtaining payment of his salary, and compelling the Madison County Board to pay VAC attorneys' fees. On the other hand, Lavite's federal suit arises out of events that occurred years before the events underlying the state case. Specifically, Lavite alleges that the defendants violated his federal constitutional rights when they retaliated against him in response to his refusal in 2012 to pay a Madison County probation department employee's salary from VAC funds, as well as his reluctance in 2013 to spend McAtac Foundation funds on certain county employees. He also argues that defendants violated his constitutional rights by failing to either enact or follow rules in the face of a duty to do so.

Because Lavite is not attempting to challenge or set aside a state court judgment, the defendants' motion to dismiss on this ground is **DENIED**.

### D. Lavite's Complaint States Plausible Claims To Relief Under Rule 12(b)(6)

#### a. First Amendment Retaliation (Counts I, II, VI, and VII)

The defendants argue that Lavite's complaint fails to state plausible First Amendment retaliation claims. Counts I, VI, and VII allege that the "standing order" issued by Parente, endorsed by Gibbons, and enforced by the Sheriff's Department violated Lavite's First Amendment right to peaceably assemble on public property. Count II alleges that Parente's "demand" for Lavite's termination and the above-referenced "standing order" violated Lavite's First Amendment right to free speech.

To state a First Amendment retaliation claim, Lavite must plausibly allege "that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Assuming the truth of the complaint's factual allegations, the Court finds that Counts I, II, VI, and VII state plausible claims to relief. Based on the pleadings, it is plausible that (1) Lavite was engaged in protected speech or assembly activities property when he denied Parente's request to pay a Madison County probation officer's salary with VAC funds or when he dissented at the McAtac Foundation board meeting; (2) Lavite suffered an adverse action that would likely deter future First Amendment activity when, on March 20, 2015,

Parente "demand[ed]" Lavite's termination as VAC superintendent and issued the "standing order" to indefinitely prohibit Lavite from accessing his workplace on Madison County property; and (3) that Lavite's protected speech or assembly activities were a motivating factor in the defendants' decision to retaliate against him.

Because Lavite has stated plausible claims to relief based on the First Amendment that are sufficient to put the defendants on notice of their allegedly wrongful conduct, the defendants' motion to dismiss on this ground is **DENIED**.

### b. Fourteenth Amendment Due Process (Counts III, IV, and V)

The defendants also argue that Lavite's complaint fails to state plausible Fourteenth Amendment due process violations. Lavite's due process claims are based on certain provisions of the Madison County Personnel Policy that allegedly required the defendants to establish, implement, and follow certain procedures (*see, e.g.*, Doc. 56 ¶ 48).

Under some circumstances, a public employer's employee handbook or personnel policy may give rise to a cognizable property interest in public employment or a similar "benefit" for purposes of the Fourteenth Amendment. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 600–02 (1972); *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867–68 (7th Cir. 1995) (Easterbrook, J.). "'[P]roperty' denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Sindermann*, 408 U.S. at 601 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Furthermore, "[a] person's

interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* (citing *Roth*, 408 U.S. at 577); *see also Miller*, 47 F.3d at 868 ("an employment handbook may establish a legitimate claim of entitlement if it satisfies *Sindermann*'s essential requirement, which we took to be the existence of a 'mutually explicit understanding.'") (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1482 (7th Cir. 1994)). Thus, if an employee handbook or other applicable personnel policy creates an express or implied contract between a public employer and its employees, covered employees may have a legitimate claim of entitlement to the benefits promised therein. *See Miller*, 47 F.3d at 867–68 (analyzing whether Illinois municipal employer's personnel manual constituted binding contract).[4]

On the face of the pleadings, which quote from, but do not include, the Madison County Personnel Policy, the Court finds it plausible, at this stage, that the Policy could have given rise to legally binding obligations under Illinois law sufficient to require defendants to implement or adhere to certain investigative procedures. The Court therefore finds it plausible that Lavite could have a legally cognizable interest in the benefit of certain procedures sufficient to sustain his

---

[4] Illinois law would govern the question of whether the Madison County Personnel Policy could give rise to binding contractual obligations. *See Sindermann*, 408 U.S. at 602 n.7 ("Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."); *Miller*, 47 F.3d at 867–68 (applying Illinois law to determine whether municipal employer's personnel manual could give rise to binding contract sufficient to support Fourteenth Amendment due process claim).

Fourteenth Amendment due process claims. For these reasons, the defendants' motions to dismiss on this ground are **DENIED**.

### E. Lavite's Complaint Adequately Pleads Municipal Liability Under 42 U.S.C. § 1983 and *Monell*

To state a § 1983 claim against a municipality, the complaint must allege that "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Sims*, 506 F.3d at 514 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Further, under such a theory, "there is no respondeat superior liability... [as] the Supreme Court 'distinguish[es] acts of the municipality from acts of employees of the municipality.'" *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original) (internal citations omitted)); *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n. 58 (1978). In so doing, it limits liability to "action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Thus, plaintiff must eventually prove the constitutional violation was caused by one of the following: "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone*, 665 F.3d at 780 (quoting *Darchak v. City of Chi. Bd. of Educ.*, 580 U.S. 622, 629 (7th Cir. 2009)).

The question of "whether an entity has final policymaking authority is a question of state or local law." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 492 U.S. 701, 737 (1989)); *See also Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th

Cir. 1999); *Darchak*, 580 F.3d at 630. However, "not every municipal official with discretion is a final policymaker," as "authority to make final policy in a given area requires more than mere discretion to act." *Id.* (citing *Darchak*, 580 F.3d at 630 and *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)). The relevant question is whether the official's "decisions are subject to review by a higher official or other authority." *Id.* (citing *Gernetzke*, 274 F.3d at 469).

Thus, the situations in which municipal liability is proper under this theory are limited to when "the official who commits the alleged violation . . . has authority that is final in the special sense that there is no higher authority." *Gernetzke*, 274 F.3d at 469. The official "must possess 'responsibility for making law or setting policy,' i.e. 'authority to adopt rules for the conduct of government,'" rather than "the mere authority to implement pre-existing rules...." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (citing *Rasche v. Village of Beecher*, 336 F.3d 588, 599, 601 (7th Cir. 2003) (internal citations omitted); *See also Auriemma v. Rice*, 957 F.2d 397, 400–01 (7th Cir. 1992)). Such authority "may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority...." *Rasche*, 336 F.3d at 600; *See also Pembaur*, 475 U.S. at 483; *Eversole v. Steele*, 59 F.3d 710, 716–17 (7th Cir. 1995). If the power is delegated, however, then the "person or entity with final policymaking authority must delegate the power to make policy, not simply the power to make decisions." *Darchak*, 580 F.3d at 630; *see also Kujawski*, 183 F.3d at 739.

The Seventh Circuit has also held that a single decision attributable to a municipality can create a cause of action under § 1983 if "the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997). This is true even where "a final decision maker's adoption of a course of action [is] 'tailored to a particular situation and not intended to control decisions in later situations,'" because that adopted course of action by authorized decision makers "surely represents an act of official government 'policy' as that term is commonly understood." *Id.* at 406 (quoting *Pembaur*, 475 U.S. at 481); *Pembaur*, 475 U.S. at 481. "Where action is taken by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481.

Defendants argue that Counts I through VII should be dismissed because they fail to plead municipal liability. Specifically, the defendants argue that Lavite has failed to plausibly allege that an express municipal policy or a decision by a municipal agent with final policymaking authority violated his constitutional rights (*see* Doc. 61, pp. 9–14; Doc. 62, pp. 15–16).

Here, the Court finds that Lavite has stated a plausible claim for municipal liability under 42 U.S.C. § 1983 and *Monell*. Counts I through VII, taken together, allege that the directive prohibiting Lavite from accessing his VAC office was issued by Parente, the Madison County Administrator (who acts pursuant to the

direction of Dunstan, the Madison County Board Chairman), endorsed either explicitly or implicitly by Gibbons, the State's Attorney of Madison County, and enforced by Sheriff Lakin and the Madison County Sheriff's Department. Lavite further alleges that this directive, among other actions, violated his constitutional rights.

If these allegations are proven to be supported by adequate evidence, they could plausibly support *Monell* liability on the theory that Parente, Dunstan, Gibbons, Lakin, or another Madison County agent with final decision-making authority adopted a course of action that was "tailored to a particular situation," because that course of action could "represent[ ] an act of official government 'policy' as that term is commonly understood." *See Brown*, 520 U.S. at 405; *Pembaur*, 475 U.S. at 481. Furthermore, if there is evidence to support such a theory, evidence that Madison County acted and that Lavite thereby suffered a deprivation of federal rights could also prove fault and causation. *See Brown*, 520 U.S. at 405.

Therefore, because Lavite has plausibly stated claims for municipal liability under 42 U.S.C. § 1983 and *Monell*, defendants' motions to dismiss on this ground are **DENIED**.

**F. The Madison County Sheriff's Department Is An Improper Party**

Finally, Defendant Madison County Sheriff's Department (the "Department") contends that it should be dismissed from this action because it cannot be sued separately from the Madison County government (Doc. 61, pp. 8–9). According to

Federal Rule of Civil Procedure 17(b)(3), state law determines whether an entity has the capacity to be sued in federal court. Fed. R. Civ. P. 17(b)(3). Under Illinois state law, a party must have a legal existence, either natural or artificial, to be sued. *Jackson v. Vill. of Rosemont*, 180 Ill. App. 3d 932, 937 (1988). Departments within a governing body have no legal existence separate from the governing body and cannot be sued under 42 U.S.C. §1983. *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) (finding that the "[c]ounty Sheriff's Department is not a legal entity separable from the county government which it serves and is therefore, not subject to suit"); *Wagner v. Washington Cty.*, 493 F.3d 833, 835 (7th Cir. 2007) (sheriff's department is a division of the county and not a justiciable entity); *see also Schollmeyer v. Lind*, No. 17-CV-407-JPG-RJD, 2018 WL 770499, at *2 (S.D. Ill. Jan. 16, 2018), *report and recommendation adopted*, No. 17-CV-00407-JPG-RJD, 2018 WL 747506 (S.D. Ill. Feb. 7, 2018) (Gilbert, J.) (dismissing Madison County Sheriff's Department as defendant due to lack of capacity to be sued as separate legal entity).

Accordingly, because the Madison County Sheriff's Department does not have an independent legal existence, it cannot be sued separately from the Madison County government.

## V.    Conclusion

For the reasons stated above, defendants Lakin and the Madison County Sheriff's Department's motion to dismiss (Doc. 61) is **GRANTED IN PART AND**

**DENIED IN PART.** The Court **DIRECTS** the Clerk of Court to terminate the Madison County Sheriff's Department as a defendant in this case.

Furthermore, defendants Dunstan, Parente, Gibbons, and Madison County's motion to dismiss (Doc. 62) is also **DENIED.**

Finally, plaintiff's motion to strike (Doc. 66) is **DENIED.**

  **IT IS SO ORDERED.**

Judge Herndon
2018.03.29 16:16:34
-05'00'

**United States District Judge**