IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRADLEY A. LAVITE,

                Plaintiff,

vs.

                                 No. 16-cv-882-DRH-RJD

ALAN J. DUNSTAN, et al.,

                Defendants.

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

## I. Introduction

Pending before the Court are four motions: (1) a Motion to Dismiss (Doc. 129) submitted by Defendants Joseph Parente, Alan Dunstan, Thomas Gibbons, and Madison County, Illinois ("Defendants") on May 29, 2018; (2) a Motion to Disqualify Counsel (Doc. 130) submitted by Defendants on June 19, 2018; (3) a Motion for Summary Judgment (Doc. 145) submitted by Defendant John Lakin ("Lakin") on August 10, 2018; and, (4) a Motion for Summary Judgment (Doc. 147) submitted by Defendants on August 10, 2018. Plaintiff Bradley Lavite ("Plaintiff") offered on July 2, 2018 a response in opposition of Defendants' Motion to Dismiss. (Doc. 134). Defendants offered on July 2, 2018 a reply to Plaintiff's response in opposition. (Doc. 136). Plaintiff offered on July 3, 2018 a response in opposition of Defendants' Motion to Disqualify. (Doc. 138). Plaintiff

offered on September 10, 2018 a response in opposition of Defendants' Motion for Summary Judgment. (Doc. 156). Defendants offered on September 24, 2018 a reply to Plaintiff's response in opposition. (Doc. 158). Defendant Lakin offered on September 24, 2018 a reply to Plaintiff's response in opposition. (Doc. 159). For the reasons set forth below, the Court **GRANTS** Defendant Lakin's Motion for Summary Judgment (Doc. 145); **GRANTS** Defendants' Motion for Summary Judgment (Doc. 147); **DENIES AS MOOT** Defendants' Motion to Disqualify (Doc. 130); and, **DENIES AS MOOT** Defendants' Motion to Dismiss (Doc. 129).

## II. <u>Background</u>

This matter arises out of Defendants' refusal to permit Plaintiff from returning to his office located within Madison County, Illinois' county administration building ("the Building"). On May 11, 2017, Plaintiff filed his first amended eight count complaint ("the Complaint") (Doc. 56) alleging various violations of his constitutional rights under 42 U.S.C. §1983 and an action for accounting under Illinois law. The complaint alleges the following relevant facts.

Plaintiff is an army veteran who was deployed to Iraq, exposed to multiple detonations of improvised explosive devices, and suffered serious injuries in combat. Since 2004, Plaintiff has been under the care of the OEF/OIF PTSD Clinical Team at the St. Louis Veterans Administration Medical Center at Jefferson Barracks and has complied with the treatment program. In 2009, the Madison County Veterans' Assistance Commission ("VAC") elected Plaintiff as the

superintendent of the VAC, and Plaintiff held that position at all times relevant to his claim.

In September of 2009, Plaintiff helped set up the structure of the first veterans' alternative treatment court in Illinois. In August 2010, "Friends of McAtac Foundation" ("FMF"), a not-for-profit corporation, was incorporated with the stated purpose of raising funds for the new veterans' court, funds that would directly benefit veterans that come into contact with the Madison County, Illinois court system. Plaintiff was offered and accepted a position on the Board of the FMF and, over the next three years, the FMF raised a total of $30,000. In the spring of 2013, Plaintiff requested a meeting to discuss the expenditure of FMF's funds. At the meeting, it was proposed that at least part of the $30,000 raised be spent to send several judges and probation department employees to attend an alternative treatment court conference in Anaheim, California. Plaintiff voiced his objection to the proposal because the funds were to be used for the direct benefit of veterans.

In March of 2014, Plaintiff suffered a post-traumatic stress disorder ("PTSD") episode which caused him to be transported to a local mental health facility at Gateway Regional Medical Center in Granite City, Illinois; nothing about the incident occurred on Madison County property. On or about March 5, 2015, while at his residence, Plaintiff suffered another PTSD episode which caused him

to be transferred to the VA Medical Center for treatment. The Complaint alleges that on March 6, 2015:

> County Administrator Parente sent a letter to Robert Sedlacek, the President of the VAC Executive Boad. Without specifics, the letter referred to complaints Parente and other county personnel had received from VAC employees related to [Plaintiff's] conduct in the VAC office. In this letter, despite section 10 of the Military Veterans' Assistance Act expressly stating that VAC employees are not county employees, and said section specifically exempting VAC employees from the operation and provisions of any civil service act or laws of the state of Illinois, Administrator Parente attempted to convince the VAC Executive Board that it was subject to, and required to follow, Madison County Personnel Policies.

(Doc. 56, p. 12).

A letter from Plaintiff's VA psychiatrist, Dr. Jane Loitman, dated March 18, 2015, advised all concerned with Plaintiff's hospitalization that he would be able to work without limitations on March 23, 2015. On March 20, Defendant Parente issued a "standing order" that Plaintiff "not be permitted on county property and if he appears, he is to be arrested for trespassing." *Id.* The Complaint further alleges that, to date, Defendants continue to refuse to permit Plaintiff on county property or to return to his office in the county administration building.

On August 10, 2018, Defendant Lakin filed a motion for summary judgment (Doc. 145) regarding the two counts directed against him. In Counts IV and V of the Complaint, Plaintiff alleges that he has been deprived of due process guaranteed to him under the Fourteenth Amendment as a result of Defendant Lakin's alleged failure to properly investigate whether Plaintiff should be barred from Madison County property as a result of the March 5, 2015 incident involving

the Wood River, Illinois Police Department. *Id.* In support of summary judgment, Defendant Lakin offers an affidavit. *Id.* – Exhibit 1.

On August 10, 2018, Defendants filed a motion for summary judgment (Doc. 148) regarding counts I, II, III, VI, VII, and VIII. In support of summary judgment, Defendants offer affidavits of Alan Dunstan and Joseph Parente, a dash cam video of the March 5, 2015 incident, a March 22, 2015 psychological evaluation of Plaintiff, and various correspondences.

### III. <u>Applicable Law</u>

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir.

2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). If genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## IV. <u>Analysis</u>

Plaintiff's eight count first amended complaint alleges as follows: (1) a violation of Plaintiff's First Amendment right to peaceably assemble on county property; (2) a violation of Plaintiff's First Amendment right to free speech because Defendants banned Plaintiff from accessing his office in the Building; (3) a violation of Plaintiff's Fourteenth Amendment due process rights because Defendants failed to follow their own policies and procedures; (4) a violation of

Plaintiff's Fourteenth Amendment due process rights because Defendant Lakin failed to assure there were adequate rules and procedures in effect on how to conduct an investigation he might be called upon to perform pursuant to Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook ("the Handbook"); (5) a violation of Plaintiff's Fourteenth Amendment due process rights because, in the event Defendant Lakin had in place rules and procedures, Defendant failed to follow such rules and procedures; (6) a violation of Plaintiff's First Amendment right to assemble because Defendant Gibbons, as Madison County State's Attorney, advised County Chairman Alan Dunstan and County Administrator Joseph Parente that banning Plaintiff from county property was a legally permissible course of action and would not violate his constitutional rights; (7) a violation of Plaintiff's First Amendment right to assemble because Defendant Gibbons failed to advise Defendants Dustan and Parente that banning Plaintiff from county property would violate Plaintiff's constitutional right to peaceably assemble; and, (8) an action against public officials, under Illinois law, for an accounting of monies. In Defendant Lakin's motion for summary judgment, he seeks judgment as a matter of law on Counts IV and V. In Defendants' motion for summary judgment, they seek judgment as a matter of law on Counts I, II, III, VI, VII, and VIII. Each count shall be analyzed in turn.

## A. <u>Count I: First Amendment Right to Assemble</u>

In Count I, Plaintiff alleges that Defendants violated his right to peacefully assemble on County property by preventing him from returning to his office in the Building. (Doc. 56, p. 15).

Under the First Amendment of the United States Constitution, the government shall not prohibit the "right of the people peaceably to assemble." U.S Const. amend. I. The extent to which the government can regulate speech on property must be analyzed under the "forum analysis doctrine." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). The exact constitutional standard depends on whether the government is trying to regulate a "public forum" or a "nonpublic forum." *Grossbaum v. Indianapolis-Marion Cty. Bldg. Auth.*, 100 F.3d 1287, 1296 (7th Cir. 1996).

Property may be designated as a public forum either by tradition or designation. *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995). The first category of public forums are traditional public properties like streets and parks which have "immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939)). Such traditional public forums are subject to the highest scrutiny, and regulations restricting access survive only if they are narrowly drawn to achieve a compelling state interest. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678

(1992). The second category of public forums is the designated public forum which is subject to the same limitations governing a traditional public forum. *Id.* This includes such property that the "State has opened for expressive activity by part or all of the public." *Id.*

Any remaining government property, not classified as a public forum under either of the above categories, is considered a nonpublic forum and subject to a much more limited review. *Id.* at 679. "The challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Id.* Thus, in a nonpublic forum, the government may control access if:

> [R]estricting identifiable subjects or speakers, if the two criteria of reasonableness and viewpoint neutrality are met. Concerning the "reasonableness" prong, *Cornelius* has made clear that the government's "decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation. In contrast to a public forum, a finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated."

*Grossbaum*, 63 F.3d 581, 587 (7th Cir. 1995) (quoting *Cornelius*, 473 U.S. at 808).

In this case, the Building is a general government office building that has not been traditionally open to the public for the purposes of assembly. Moreover, there is nothing to suggest, nor does Plaintiff allege, that said building qualifies as a designated public forum. Thus, the Building qualifies as a nonpublic forum and the proper analysis of any regulated speech is under the nonpublic forum

doctrine. To survive review, Defendants' action in banning Plaintiff from the building must have been reasonable and viewpoint neutral.

In their motion for summary judgment, Defendants argue that their action in banning Plaintiff from accessing the Building was reasonable because it was to ensure the safety of others. The record indicates that on March 5, 2015, Plaintiff had a PTSD episode while at his home in Wood River, Illinois which led to the Wood River Police escorting him to the hospital. During the incident, Plaintiff threatened to kill the responding officer, kicked out the window of the vehicle, and jumped out the window. On March 20, 2015, Major Connor of Madison County Sheriff's Department contacted Defendant Parente to request that he review the dashcam video from March 5, 2015. After reviewing the video, Defendant Parente determined that it was not safe for Plaintiff to return to the Building and then advised Plaintiff of his decision in a March 20 letter.

In response, Plaintiff argues that Defendants' action in banning him from the Building was related to Plaintiff "expressing his belief that McAtac funds should be used for direct aid to veterans as promised in fund raising literature, and that VAC funds belong to the VAC and are not under county influence or control." (Doc. 156, p. 3). Plaintiff contends that this type of action is an unreasonable effort to suppress Plaintiff's speech based on his viewpoint.

Defendants have demonstrated there is no genuine issue of material fact as it relates to Defendants' reasoning for banning Plaintiff from the building. After adequate time for discovery, Plaintiff has failed to make a sufficient showing that

Defendants' action was unreasonable and related to Plaintiff's viewpoint. Specifically, the timing of relevant events are noteworthy. In the spring of 2013, it was proposed at a FMF meeting that at least part of the $30,000 raised be spent to send several judges and probation department employees to attend an alternative treatment court conference in Anaheim, California. Plaintiff voiced his opposing viewpoint to the proposal. Over the next two years, while knowing Plaintiff expressed an opposing viewpoint related to the use of funds, Defendants did not ban Plaintiff from accessing the Building. Rather, Defendants banned Plaintiff within weeks of the March 5, 2015 incident. On March 20, 2015, after Defendant Parente reviewed dashcam footage of the incident, he drafted a letter to Plaintiff advising him that he was no longer permitted access to the Building. Therefore, based on the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendants' action was related to Plaintiff's opposing viewpoint is not sufficient to create a genuine issue of material fact.

**B.  Count II: First Amendment Right to Free Speech**

In Count II, Plaintiff alleges that Defendants violated his right to free speech by banning him from "county property" in retaliation against him for:

> [H]aving voiced his objection to the expenditure of Friends of McAtac Foundation funds to send judges, county probation department personnel and others to an alternative court conference in California, when those funds were raised upon the representation that they would be used only for direct benefit to veterans, his withdrawal of VAC support of the veterans' alternative court, and his refusal to use VAC funds to pay the salary of county probation department employee . . . .

(Doc. 56, p. 15).

The Supreme Court has held that the government has the right to exercise control over access to the [workplace] in order to avoid interruptions to the performance and duties of the employees. *U.S. Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114 (1981). To establish a prima facie case of unlawful First Amendment retaliation, a public employee must establish that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter him from exercising First Amendment rights; and, (3) his speech was a motivating factor in the employer's adverse action. *Massey v. Johnson*, 457 F.3d 711 716 (7th Cir. 2006).

In this case, Plaintiff alleges that: (1) he engaged in constitutionally protected speech when he rejected Defendant Parente's 2012 request that Plaintiff use some of the VAC's budget to pay the salary of a probation department employee and when Plaintiff objected to Defendants' use of the $30,000 in FMF funds; (2) he suffered a deprivation by Defendants banning him from the Building; and, (3) his speech was a motivating factor in the Defendants' adverse action. In their motion for summary judgment, Defendants argue that (1) Plaintiff's activities in which he claims protection were not constitutionally protected speech because they were performed pursuant to his duties, and (2) there is no causal nexus between the alleged protected activity and the alleged adverse employment activity.

In response, Plaintiff argues, in part, that the speech at issue had nothing to do with Plaintiff's duties as Superintendent of the VAC. Rather, part of his speech

was made in his capacity as a FMF board member. Additionally, Plaintiff takes issue with the authority presented by Defendants because in each case the plaintiff was a public employee and the "superintendent of the Madison County VAC is not a public employee." (Doc. 156, p. 8).

**1. Constitutionally Protected Speech**

As to the first element, Plaintiff's 2012 comments related to his refusal to provide VAC funds to the probation department do not qualify as constitutionally protected speech.

In determining whether speech is constitutionally protected, the first item to determine is whether the plaintiff's speech was made as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006). If the answer to this question is no, then the employee has no First Amendment cause of action. *Connick v. Meyers*, 461 U.S. 138, 146 (1983).

In *Garcetti*, the Supreme Court specifically recognized that where employees are fulfilling their employment responsibilities "the employees are not speaking as citizens for First Amendment purposes, the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In this case, Plaintiff's 2012 comments related to VAC funds were made while Plaintiff was fulfilling his responsibilities as Superintendent of the VAC. Therefore, such comments are not constitutionally protected.

Similarly, Plaintiff's 2013 comments related to his objection to the proposed allocation of FMF funds were related to his responsibilities as

Superintendent of the VAC because the record indicates that, while at the 2013 meeting, Plaintiff produced a copy of the Veterans' Treatment Court Act to discuss how the VACs were not included in the Act and had no legal obligation to provide assistance to the treatment court. Therefore, such comments are not constitutionally protected.

## 2. Motivating Factor

As to the last element of a prima facie case of First Amendment retaliation, assuming, *arguendo*, the speech at issue is protected, Plaintiff fails to show how such protected speech was a motivating factor in Defendants banning him from the Building. A plaintiff must establish a causal nexus between the protected conduct and the adverse action. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013). Even if a plaintiff can show "suspicious timing" of an adverse employment action, it will "rarely be sufficient in and of itself to create a triable issue" to survive summary judgment. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). The closer two events are, the more likely causation will be found. *Id.* However, "it is clear from our case law that the time period between the protected activity and the adverse action must be very close." *Id.* (internal quotations omitted).

As previously discussed, in this case, the timing of the events is noteworthy. Defendants banned Plaintiff from the Building in 2015. The two sets of statements, even when viewed as protected speech, were made in 2012 and 2013,

respectively. In contrast, Plaintiff's March 5, 2015 incident with the Wood River, Illinois Police Department occurred close in time to the adverse action, which occurred 15 days later. Therefore, based on the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendants retaliated against him for engaging in protected speech is not sufficient to create a genuine issue of material fact.

**C. Count III: Fourteenth Amendment Right to Due Process**

In Count III, Plaintiff alleges that Defendants failed to follow their own policies and procedures which deprived him of process that was due in violation of the Fourteenth Amendment of the United States Constitution.

The Fifth Amendment, as applicable to the states through the Fourteenth Amendment, states "no person shall be . . . deprived of life, liberty, or property without due process of law." U.S. CONST. amends. V, XIV. The Supreme Court has stated "procedural due process applies only to the deprivation of interest encompassed by the Fourteenth Amendment's protection . . . [and] the range of interests protected by procedural due process is not infinite." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972).

In this case, Plaintiff alleges that his due process rights were violated when Defendants did not follow their own policies and procedures. Specifically, Plaintiff points to the Handbook which provides, "[I]n cases where the perpetrator is not a County employee or in any other case the County deems advisable, law enforcement officials may be asked to conduct the investigation." (Doc. 56, p. 16).

Plaintiff contends that Defendant violated the above directive by not contacting law enforcement officials prior to banning Plaintiff from the Building.

In their motion for summary judgment, Defendants argue, in part, that Defendants' failure to follow internal policies is not sufficient to state a due process claim. *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018); *Mann v. Vogel*, 707 F.3d 872, 882 (7th Cir. 2013); *Shango v. Jurich*, 681 F.2d 1091, 1101-01 (7th Cir. 1982).

In *Manley*, the court noted that "[e]ven when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a *substantive* liberty or property interest." *Manley*, 889 F.3d at 893 (citing *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013)). In other words, it is "well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinances." *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989).

In this case, the policy at issue states that "law enforcement officials *may* be asked to conduct the investigation." (Doc. 156, Exhibit 4). Plaintiff has identified no substantive liberty or property interest attached to the procedural rule he claims Defendants violated. Therefore, based on the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendants violated

his due process rights by not following established policy is not sufficient to create a genuine issue of material fact.

## D. **Count IV: Violation of Due Process Against Sheriff**

In Count IV, Plaintiff alleges that Defendant Lakin, as Sheriff of Madison County, had a duty to ensure "there were adequate rules and procedures in effect on how to conduct an investigation it might be called upon to perform pursuant to the Paragraph #3 of Subsection F of Section I of the Madison County Personnel Policy Handbook." (Doc. 56, p. 17).

In *Kernats v. O'Sullivan*, the court noted that "[i]t is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate that violates a citizen's constitutional rights." 35 F.3d 1171, 1182 (7th Cir. 1994) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978)). The court further notes that supervisory liability may "attach, however, where a supervisor, with knowledge of a subordinate's conduct, approves of the conduct and the basis for it." *Id.* (citations omitted).

In this case, Plaintiff alleges that his due process rights were violated because Defendant Lakin did not have such rules and procedures in place to investigate pursuant to the Handbook.

In his motion for summary judgment, Defendant Lakin argues that Plaintiff cannot establish individual capacity against him because Defendant Parente is the individual who banned Plaintiff from the building. Additionally, liability cannot

attach against Defendant Lakin as he was never Defendant Parente's supervisor, or vice versa.

Plaintiff has failed to sufficiently support his allegation against Defendant Lakin in his individual and official capacity as Sheriff of Madison County. Therefore, based on the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendants violated his due process rights by not having rules in place is not sufficient to create a genuine issue of material fact.

**E. Count V: Violation of Due Process Against Sheriff**

In Count V, Plaintiff pleads in the alternative to Count IV, alleging that Defendant had rules and procedures in place to investigate pursuant "resolution and investigations" of the Handbook, but failed to follow such rules and procedures.

As previously noted, "[e]ven when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a *substantive* liberty or property interest." *Manley*, 889 F.3d at 893. Additionally, an individual does not have a constitutional right to have the police investigate his case, or to do so to his level of satisfaction. *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015).

Plaintiff has identified no substantive liberty or property interest attached to the procedural rule he claims Defendant Lakin violated. Therefore, based on

the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendant Lakin violated his due process rights by not following established policy is not sufficient to create a genuine issue of material fact.

**F. Count VI & VII: Violation of First Amendment Right to Assemble Against State's Attorney**

In Counts VI and VII, Plaintiff alleges that Defendant Gibbons violated his constitutional right to peaceably assemble by advising, or failing to advise, "County Chairman Alan Dunstan and County Administrator, Joseph Parente, that banning Lavite from county property was a legally permissible course of action and did not violate any of his constitutional rights." (Doc. 56, p. 20).

As previously discussed, the Building qualifies as a nonpublic forum and the proper analysis of any regulated speech is under the nonpublic forum doctrine. To survive review, the action in banning Plaintiff from the building must have been reasonable and viewpoint neutral. In granting Defendants' motion for summary judgment as to Count I, the Court found no genuine issue of material fact as it relates to Defendants' reasoning for banning Plaintiff from the building. After adequate time for discovery, Plaintiff failed to make a sufficient showing that Defendants' action was unreasonable and related to Plaintiff's viewpoint.

Therefore, based on the pleadings, affidavits and information obtained via discovery, Plaintiff's allegation that Defendant Gibbons' advice to Defendants Dustan and Parente resulted in the violation of Plaintiff's constitutional right to peaceably assemble in the Building is not sufficient to create a genuine issue of material fact.

### G. **Count VIII: Accounting and Recovery**

In Count VIII, Plaintiff alleges that Defendant Parente, at the direction of Defendant Dunstan, violated Section 5-2006 of the County Code (50 ILCS 5/5-2006) when he assumed "control over VAC moneys from the 'special fund' where they were supposed to be deposited and made 'investments' of VAC moneys in ventures without the knowledge or consent of the VAC or any of its officers or its superintendent." (Doc. 56, p. 25). Plaintiff further alleges that Illinois law provides for an accounting of monies allegedly mismanaged by a public official. *Id.* at p. 27.

Federal Court jurisdiction may arise in one of two ways – original jurisdiction or supplemental jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546 (2005). Original jurisdiction is over all claims arising under federal law (28 U.S.C.A. 1331, i.e. "federal question jurisdiction,") or over cases in which the parties are diverse and the requisite amount in controversy is pled (28 U.S.C.A. 1332, i.e. "diversity jurisdiction.").

Once the Court exercises original jurisdiction over a claim, it may choose to exercise jurisdiction over related state law claims where those state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution (i.e. "supplemental jurisdiction"). 28 U.S.C.A. 1367(a). However, district courts may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C.A. 1367(c). Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right. *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966).

In this case, the Court exercised its original jurisdiction over Counts I through VII because each claim arises under federal law. As to Count VIII, the Court exercised its supplemental jurisdiction because the claim arises under Illinois law. Specifically, in Count VIII, Plaintiff alleges that "[a]n action for an accounting is appropriate remedy under Illinois law against a public official for monies coming into that official's hands." (Doc. 56, p. 27). As previously discussed, the Court granted both Defendants' motion for summary judgment as to Counts I, II, III, VI, VII and Defendant Lakin's motion for summary judgment as to Counts IV and V.

Therefore, because the Court has dismissed all claims over which it has original jurisdiction, it now declines to exercise supplemental jurisdiction over the sole remaining state law claim within Count VIII.

## V. <u>Conclusion</u>

In sum, the Court concludes Plaintiff failed to make a sufficient showing of the essential elements of his claims. The Court believes that summary judgment is appropriate here because the record supports such a finding.

Accordingly, the Court finds there are no genuine issues of material fact and **GRANTS** both Defendants' Motion for Summary Judgment and Defendant Lakin's Motion for Summary Judgment. Plaintiff's claims, as to all defendants, are **DISMISSED WITH PREJUDICE**. The Court's order herein moots all other claims, counter-claims, and cross claims. Clerk to enter judgment dismissing Plaintiff's complaint and all ancillary claims herein.

**IT IS SO ORDERED.**

Judge Herndon
2018.10.29
13:48:12 -05'00'

**United States District Judge**